**322**

COLUMBIA GAS TRANSMISSION
CORP., Plaintiff

v.

LAUREN LAND COMPANY,
INC., Defendant.

Civ.A. No. 97–149.

United States District Court,
E.D. Kentucky,
Pikeville Division.

June 30, 1998.

John Armstrong West, Roger G. Wright, Greenebaum, Doll & McDonald, P.L.L.C., Lexington, KY, for Plaintiff.

Charles J. Baird, Baird, Baird, Baird & Jones, Pikeville, KY, for Defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

Pocahontas Development Corporation ("Pocahontas") has moved the Court [Record No. 21] to intervene and/or be declared an indispensable party.[1] The plaintiff, Columbia Gas Transmission ("Columbia"), has responded [Record No. 25], to which Pocahontas has replied [Record No. 26]. This matter is now ripe for decision.

The following are the pertinent facts. Columbia owns and operates a twenty inch natural gas pipeline designated as Line KA–20. Line KA–20 was originally constructed in 1931 by Columbia's predecessor in title, Warfield Natural Gas Company. Through mesne assignments and conveyances, Columbia acquired ownership of Line KA–20 in 1970.

The section of Line KA–20 in question lies in the Blackberry Creek area of Pike County. This section was originally constructed across three surface tracts that were owned by W.P. Hatfield, J.D. Hardy, and A.H. Scott ("HHS") back in 1931. Warfield obtained right-of-way agreements from each of these surface owners ("HHS rights-of-way") prior to the construction of the pipeline that became Line KA–20. Line KA–20 is presently operated and maintained pursuant to these right-of-way agreements.

At the time of the original construction of Line KA–20, Fordson Coal Company owned two noncontiguous fee tracts which were situated east and west of HHS's surface properties. On May 7, 1931, Warfield obtained a right-of-way from Fordson for the construction of the pipeline that eventually became Line KA–20. The grant of this right-of-way by Fordson to Warfield was memorialized in an agreement ("Fordson agreement").

In 1987, Pocahontas acquired the mineral interests in the HHS surface properties. In 1993, Pocahontas entered into a twenty year coal lease with Lauren Land Company

---

1. Pocahontas's motion is styled as "Motion and Memorandum to Intervene", but it is also being construed as a motion to be declared an indis- pensable party because it argues this point through out its briefs.

["Lauren"] under which Lauren obtained the right to mine the coal underlying the properties which are encumbered by the HHS rights-of-way.

In May 1996, Columbia received notice from Lauren that it intended to surface mine in the vicinity of Line KA–20.[2] In July 1996, Lauren requested Columbia to perform a survey to determine the amount of footage of Line KA–20 that would need to be relocated for Lauren's proposed surface mining activities. Based on this survey, Lauren was informed that the estimated cost of the relocation would be $1,869,200.996.

In October 1996, Lauren, based on the Fordson agreement, told Columbia that it was required, at its own expense, to relocate Line KA–20 to accommodate Lauren's proposed surfacing mining activities. When efforts to resolve the dispute failed, Columbia commenced this declaratory judgment action against Lauren. The parties have agreed on a relocation site for the line, but they disagree as to who should have to pay for the relocation.

Based on the above facts, the primary issue in front of the Court is whether Pocahontas is an indispensable party under Federal Rule of Civil Procedure 19. Under Rule 19(a), it is pretty clear that Pocahontas is a necessary party. Pocahontas holds title to the mineral rights in the property on which Columbia has been granted conditional rights-of-way for the construction and maintenance of Line KA–20; Lauren is merely Pocahontas's lessee. As the owner of the mineral rights to the property in question, Pocahontas certainly has an interest in and will be affected by a determination of who bears the burden of relocating the pipeline that intersects its property. Additionally, Pocahontas's ability to protect its interest could be impeded by an adverse ruling.[3]

The problem, however, is that Pocahontas, a Kentucky Corporation, has its principal place of business in West Virginia, and this destroys diversity jurisdiction because Columbia is also a citizen of West Virginia. Therefore, the Court will have to dismiss the above-styled action for lack of subject matter jurisdiction if it is found that Pocahontas is an indispensable party. *See Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 672 (6th Cir. 1988).

In determining whether Pocahontas is an indispensable party, the factors in Rule 19(b) must be applied:

> If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

As to the case at bar, if the Court held that Columbia was not required to pay for the relocation cost, Pocahontas would be extremely prejudiced. The prejudice would result from the fact that Columbia would not be paying to have the line moved, and hence, Pocahontas might have to pay some of the relocation cost. Additionally, an adverse decision could be used as persuasive authority in a similar action elsewhere between Pocahontas and Columbia.

Columbia's main argument is that Pocahontas's interests are adequately represented by Lauren, and thus, Pocahontas will not be prejudiced by the case going forward without it. The Sixth Circuit, in an intervenor action, stated the following on the issue of adequacy of representation:

> Although a would-be intervenor is said to shoulder the burden with respect to establishing that its interest is not adequately

---

**2.** This particular section is maintained pursuant to the HHS rights-of-way.

**3.** Columbia does not really challenge the fact that Pocahontas is a necessary party.

**324**

protected by the existing parties to the action, this burden "is minimal because it is sufficient that the movant [ ] prove that representation may be inadequate." One is not required to show that the representation will in fact be inadequate. For example, it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments. (internal cites omitted) *Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1247 (6th Cir.1997).

In the case at bar, Pocahontas has raised a defense that was not raised by Lauren.[4] Based on this additional defense, as well as Pocahontas having more rights at stake than Lauren, it is not a stretch to say that Lauren may not be adequately representing Pocahontas's interests.[5]

Furthermore, a judgment rendered in Pocahontas' absence will not be adequate because it will not be binding on Pocahontas. However, if this case is dismissed, Columbia can bring this action in state court where all the parties can have their views heard, and a binding ruling can be issued.[6]

In summary, after weighing and considering all the factors, the Court finds that the above-styled action should be dismissed because Pocahontas is an indispensable party. In the interest of fundamental fairness and equity, all interested parties, including Pocahontas, should have an opportunity to express their views on this important matter.

Accordingly,

**IT IS ORDERED** that Pocahontas's motion [Record No. 21] be, and the same hereby is, **GRANTED,** and the above-styled action be, and the same hereby is, **DISMISSED WITHOUT PREJUDICE.**

---

**4.** Although Lauren fails to makes it, Pocahontas raises the defense of estoppel and argues that Columbia is estopped from attempting to transfer the cost of the line relocation.

**5.** This is a dispute concerning the property rights of Pocahontas. It involves the interpretation of Pocahontas's title document to the property, and

it will require the relocation of Columbia's pipeline onto another area of Pocahontas's property. Thus, this dispute should not be addressed without Pocahontas's participation.

**6.** Columbia has an adequate remedy in state court.